UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER STOLLER and MICHAEL STOLLER, <br><br> Plaintiffs, <br><br> v. <br><br> THOMAS FUMO; RELIABLE MANAGEMENT REALTY, LTD.; KOVITZ SHIFRIN NESBIT; JORDON SHIFRIN; ROBERT NESBIT; NICHOLAS MITCHELL; DIANE SILVERBERG; ALLEN KOVITZ; RONALD KAPUSTKA; WENDY DURBIN; and UNKNOWN CONTRACTORS, LAWYERS, LAW FIRMS, BUILDING DEVELOPERS, REALTORS, and JOHN DOES 1-10, <br><br> Defendants. | No. 19 C 02546 <br><br> Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

In what is ostensibly a landlord-tenant dispute, Christopher and Michael Stoller allege that a property-management company (and its employees) and a law firm (and its partners) have violated various federal and state laws. R. 29, Am. Compl.[1] The named defendants are:

▶ Property-management company Reliable Management Realty, Ltd.; and two of its employees, Donald and Thomas Fumo.

---

[1] Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

1

▶Law firm Kovitz Shifrin Nisbit (KSN); and seven of its partners, Jordon Shifrin, Robert Nesbit, Nicholas Mitchell, Diane Silverberg, Allen Kovitz, Ronald Kapustka, and Wendy Durbin (the KSN partners).[2]

The assortment of claims is premised on: the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*; the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c); the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2; and a number of other common law claims.[3] Both Reliable Management and the KSN Defendants independently move to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. R. 30, KSN Mot. Dismiss; R. 32, Reliable Mot. Dismiss. KSN and the KSN partners also moved for Rule 11 sanctions against Christopher Stoller. R. 37, KSN Mot. Sanctions. For the reasons explained below, the federal claims are dismissed with prejudice, and the Court relinquishes jurisdiction over the state law claims, so those claims are dismissed without prejudice. The motion for sanctions is denied.

**I. Background**

In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in Plaintiffs' favor. *Ashcroft v. al-Kidd*, 563 U.S. 731, 734 (2011). In October 2015, Christopher Stoller signed a lease agreement with Wesley Court Condominium Association to rent a

---

[2] The Plaintiffs also purport to sue various unknown defendants ("Unknown Contractors, Lawyers, Law Firms, Building Developers, Realtors, and John Does 1-10"), but have not sought to identify them and to serve them. They are dismissed without prejudice.

[3] This Court has federal-question jurisdiction over the federal claims, 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims, 28 U.S.C. § 1367.

2

condo unit in Oak Park, Illinois. Am. Compl. ¶ 20; *id.*, Exh. 2A. Reliable Management signed the lease agreement as the "[a]gent for and on behalf of the Wesley Court Condominium Association." *Id.*, Exh. 2A at 8. At some time after the lease was signed, Reliable's president, Donald Fumo,[4] made handwritten changes to the agreement, modifying the name of the designated landlord from "Wesley Court Condominium Association" to "Wesley *Terrace* Condominium Association." *Id.* ¶¶ 20, 50; *id.*, Exh. 2B (emphasis added). Christopher Stoller did not agree to this change.[5] *Id.*, Exh. 5. Stoller paid the rent for the apartment for November 2015 and part of December 2015. *Id.*, Exh. 1 (reflecting unpaid rent beginning with a partial December 2015 payment). [6] But then Stoller stopped paying rent altogether (and accrued corresponding late fees) throughout the years 2016, 2017, and 2018, and continuing into 2019. *Id.*

On January 13, 2019, Reliable Management sent an invoice to Christopher Stoller, seeking to collect $96,432 in back rent, late charges, and legal fees. *Id.* ¶16; *id.*, Exh. 1. According to Christopher Stoller, the invoice was sent "at the direction of" law firm Kovitz Shifrin Nesbit (KSN) and its individual partners, Michael Shifrin, Ronald Kapustra, Nicholas Mitchell, Robert Nesbit, Allen Kovitz, and Wendy Durbin.

---

[4]*Thomas* Fumo is named in the Amended Complaint's caption but only *Donald* Fumo is described in the pleading's text. Am. Compl. ¶ 13.

[5]In an eviction action brought by Wesley Terrace against Christopher Stoller, the state court held that Wesley Terrace should be sanctioned for having alleged that Christopher Stoller entered into the lease agreement with Wesley *Terrace*. Am. Compl. ¶¶ 50-51; *id.*, Exh. 5.

[6]In this Order, references to "Stoller" mean Christopher Stoller. Although Michael Stoller is a named plaintiff, it is not clear why that is so: the targeted invoices are not addressed to him; he is not a tenant on the lease agreement, and there is no specific allegation as to how he was the victim of any misconduct by the Defendants.

*Id.* ¶ 16. Within 30 days of receiving the invoice, the Stollers wrote to Reliable asking for "verification of the debt" and requesting that Reliable "no longer contact the Plaintiffs." *Id.* ¶ 17. The Stollers did not receive debt verification from Reliable. *Id.* ¶ 18. Instead, on March 1, 2019, Reliable—again supposedly acting "at the direction" of KSN and the individual partners—mailed a second invoice to the Plaintiffs for $109,208.66. *Id.* ¶ 18; *id.*, Exh. 2. Stoller rejected both invoices as fraudulent on grounds that he believed he had no contractual relationship with Wesley *Terrace*, having signed the lease agreement with Wesley Court. *Id.* ¶ 52.

In response to the invoices, Stoller filed this lawsuit against Reliable and its employees, Donald and Thomas Fumo, as well as KSN and its partners. As best as the Court can discern, the cornucopia of claims rely on the following legal theories, with the caveat that the Court has renumbered the counts because the Plaintiffs repeated some numbers while skipping others: the FDCPA (Counts 1, 2, 3, 14, 15, 16); RICO (Count 28); mail fraud (Count 5); "document fraud" (Count 19); "counterfeiting and forgery" (Count 20); "billing fraud, conspiracy, willful and wanton conduct" (Count 6); fraud (Counts 10, 29); the Illinois Consumer Fraud Act (4, 17, 24); "aiding and abetting" (Counts 7, 26); negligence (Counts 8, 23); negligent hiring and supervision (Counts 9, 27); intentional infliction of emotional distress (Counts 11, 30); tortious inducement of breach of fiduciary duty (Counts 12, 21); civil conspiracy (Counts 13, 22); "failure to comply with the laws" (Count 18); and "deceptive trade practices" (Count 25). Reliable and the KSN Defendants separately move to dismiss each count under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

KSN Mot. Dismiss; Reliable Mot. Dismiss. The KSN Defendants also move for Rule 11 sanctions against Christopher Stoller. KSN Mot. Sanctions.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[7] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

---

[7]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

5

### III. Analysis

### A. FDCPA

#### 1. Reliable Management

Reliable Management moves to dismiss the FDCPA claims (Counts 1, 2, 3, 14, 15, 16), arguing that it is not a "debt collector" under the statute. To be liable under the FDCPA, a defendant must be a "debt collector." *Ruth v. Triumph P'ships*, 577 F.3d 790, 796 (7th Cir. 2009) ("The FDCPA regulates only the conduct of 'debt collectors …'"). In pertinent part, the FDCPA defines a "debt collector" as "any person who uses … the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Reliable does not seem to dispute that the Amended Complaint adequately alleges that Reliable regularly collects debts (that is, rent and fees) owed to Wesley Terrace.

But Reliable does argue, however, that an exemption to debt-collector coverage applies to it. Reliable Mot. Dismiss at 3-4. Specifically, § 1692a(6)(F)(i) exempts from the definition of debt collector any person whose debt-collection activity is "incidental" to a fiduciary obligation:

> any person collecting or attempting to collect any debt owed … another to the extent such activity (i) is incidental to a bona fide fiduciary obligation ….

15 U.S.C. § 1692a(6)(F)(i). Relying on this incidental-activity exemption, Reliable asserts that, as the *property manager* for Wesley Terrace, Reliable's efforts to collect the debt were "incidental to a bona fide fiduciary obligation." Reliable Mot. Dismiss at 3-4.

6

Reliable is right: a property manager qualifies for the incidental-activity exemption if debt collection is only one of the property manager's various duties owed to the landlord. As a threshold matter, property managers do owe a fiduciary duty as agents to their principals, that is, the landlords. *See, e.g., Harris v. Liberty Cmty. Mgmt., Inc.*, 702 F.3d 1298, 1302 (11th Cir. 2012) ("[The property manager] owed a fiduciary obligation to the Association. Everything that [the property manager] did pursuant to the management agreement—including the collection of unpaid assessments and the enforcement of the amendment to the Association's governing declarations—was as the agent of the Association[.]"); *Reynolds v. Gables Residential Servs., Inc.*, 428 F. Supp. 2d 1260, 1264 (M.D. Fla. 2006) (concluding that a fiduciary relationship existed between the manager and the owner where the manager managed the apartment property and collected monthly rent); *Berndt v. Fairfield Resorts, Inc.*, 339 F. Supp. 2d 1064, 1068 (W.D. Wis. 2004) ("Because the language in the Timeshare Management Agreement designates the manager of the Peppertree at Tamarack property as the Association's agent and because agency creates a fiduciary relationship between the agent and the Association and defendant managed the property, I find that defendant was acting incidentally to a bona fide fiduciary obligation when it collected the maintenance fees on behalf of the Association."); *Taylor v. Precision Prop. Mgmt.*, 2015 WL 1756981, at *10 (W.D. Mich. Apr. 17, 2015) (finding that a property manager who collects debt as the agent of a condominium association is not a "debt collector" under the FDCPA); *see also Welnowska v. Westward Prop. Mgmt., Inc.*, 2014 WL 3726089, at *2 (N.D. Ill. July 24, 2014)

(collecting cases)); *Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664, 672 (7th Cir. 2004) (explaining that agency "is a fiduciary relationship in which the agent has the power to act on the principal's behalf"); *Restatement 2d Agency* § 13 ("[a]n agent is a fiduciary with respect to matters within the scope of his agency").

Here, the lease agreement (which is attached to the Amended Complaint) shows that Reliable Management signed the agreement as the agent of Wesley Court, not on Reliable's own behalf. Am. Compl., Exh. 2A at 8. The word "agent" is on the handwritten signature line, which then says that the "agent" is signing "for and on behalf of" Wesley Court. *Id*. The word "agent" appears again in the "Title" of the signatory: "Agent Reliable Management Realty Ltd." Also, the offending invoices, which are attached to Amended Complaint, say that the rent and other charges should be made payable to "Wesley Terrace Condo Association." *Id.*, Exh. 1. So, whether acting for Wesley Court or Wesley Terrace (or both), Reliable was acting as an agent and thus owed a fiduciary obligation.

Turning to whether the debt collection was "incidental" to the fiduciary obligation, the Amended Complaint alleges that Reliable "became the property manager" for Wesley Terrace. *Id*. ¶ 20. There is no suggestion in the Amended Complaint that the only duties that Reliable took on for Wesley Terrace (or, for that matter, Wesley Court) were to collect rent or other debts. Indeed, at the very least, Reliable was involved in showing Christopher Stoller the unit when he was considering renting it. *Id*. ¶¶ 43, 44 ("Dowling made the representation that he was the agent for and represented the []Wesley Court Condominium Associations, Owen

8

Dowling's Apartments, Inc., and *Reliable Management, Ltd.*") (emphasis added). In responding to the sanction motion, the Stollers confirm this: "An agent of Reliable showed Plaintiff the property …." R. 47, Pls.' Sanctions Resp. at 12. Beyond showing units to prospective tenants, Reliable also signed, as noted earlier, the lease agreement on behalf of Wesley Court. Am. Compl., Exh. 2A at 8. None of this relies on evidence outside of the pleadings. So the Stollers have pled themselves out of the FDCPA claim: the 15 U.S.C. § 1602a(6)(F)(i) exemption for incidental-activity collection applies to Reliable on these allegations.

In response, the Stollers cite *Carter v. AMC*, 645 F.3d 840 (7th Cir. 2011), to argue that Reliable does not qualify for the statutory exemption. R. 35, Pls.' Resp. at 5-6. But the argument misunderstands the way that the four exemptions in § 1692a(6)(F) operate. In *Carter*, a tenant sued a property manager for alleged violations of the FDCPA. 645 F.3d at 841. In determining that the property manager was not liable because it was not a debt collector, the Seventh Circuit held that the property manager satisfied the criteria for 15 U.S.C. § 1692a(6)(F)(iii), one of the FDCPA's four exemptions to the debt-collector definition. That particular exemption excludes those persons who collect debts obtained as a secured party in a commercial credit transaction involving the creditor. § 1692a(6)(F)(iii). The Stollers argue that Reliable Management does not qualify for that exemption, so Reliable must be a debt collector under the FDPCA. Pls.' Resp. at 6-7. The problem is that the four exemptions in § 1692a(6)(F) are written in the *disjunctive*, not as four elements that all must be met to qualify. § 1692a(6)(F) (using "or" as the conjunction). That is, the exemptions

9

comprise four *independent* exemptions. As this Court has previously explained, "Nothing about the Seventh Circuit's conclusion in *Carter* limits the potential application of the *other* three exceptions," *Welnowska*, 2014 WL 3726089, at *3 (emphasis added), including the one on which Reliable relies. With no other substantive response, the Court holds that § 1692a(6)(F)(i) applies to Reliable, and the FDCPA claims against Reliable must be dismissed.

### 2. KSN

KSN has likewise moved to dismiss the FDCPA claims against it (Counts 1, 2, 3, 14, 15 16). Because KSN did not send the letters (Reliable is alleged to have done so), the Amended Complaint appears to premise the claims against KSN on the theory that KSN directed or conspired with Reliable to send the invoices. Am. Compl. ¶¶ 14, 16. If Reliable is a debt collector, the argument presumably goes, then KSN is responsible for its agent's or co-conspirator's misconduct under the FDCPA.

As the Court just explained, however, Reliable qualifies for the incidental-activity exemption, so Reliable is not a debt collector under the FDCPA. It follows that KSN, even if it were Reliable's principal or co-conspirator, could not be vicariously liable under the FDCPA. No degree of relationship between Reliable and KSN will render KSN liable when Reliable is not. (It is worth noting that KSN also argues that it cannot be liable as an *indirect* debt collector, KSN Mot. Dismiss at 2-3, because there are no allegations that the two entities formed "a single economic enterprise," *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1142–43 (N.D. Ill. 1998), or that there is some reason to pierce the corporate veil to reach KSN, *Crawford v.*

10

*Equifax Payment Servs.*, 1998 WL 704050, at *10 (N.D. Ill. Sept. 30, 1998). KSN might very well be right in making this argument, but the Court need not address it in light of the Amended Complaint's inadequacy against Reliable.) The FDCPA claims against KSN are also dismissed.

The KSN partners likewise have moved to dismiss the FDCPA claims against them (Counts 1, 2, 3, 14, 15, 16), arguing that the statute does not reach shareholders of debt collectors unless the veil is pierced between the debt collector and the shareholders. KSN Mot. Dismiss at 3. The KSN partners are right: generally, officers and shareholders of a debt collector cannot be held liable for FDCPA violations. *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000). Indeed, the Seventh Circuit has held that suits against owners, officers, and directors of debt collectors are candidates for Rule 11 sanctions. *White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000) (holding that suing the shareholder of a debt collector was "frivolous and the plaintiffs, represented by an experienced practitioner in consumer finance litigation, should have been sanctioned for what amounts to malicious prosecution"); *Pettit*, 211 F.3d at 1059 ("As [] mentioned in *White*, FDCPA suits against the owners of a debt collection company who are not otherwise debt collectors are frivolous and might well warrant sanctions. The holding of *White* is equally applicable in this case … regardless of whether [the largest shareholder and president of the defendant debt collection company] exercised extensive control over Retrieval Masters ….").

11

To successfully allege that the corporate veil should be pierced, a plaintiff must adequately allege "such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and second, circumstances must be such that an adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Koch Refining v. Farmers Union Cent. Exchange, Inc*, 831 F.2d 1339, 1345 (7th Cir. 1987). There is nothing of the sort in the Amended Complaint. The Amended Complaint simply lists, one-by-one, each shareholder and accuses each of various forms of misconduct. Am. Compl. ¶¶ 23-28. But there are no factual allegations from which to infer that piercing the veil between KSN and the partners is appropriate. So, even independent of the conclusion that the Amended Complaint fails to state an FDCPA claim against KSN, the KSN partners would independently be dismissed from the case.

## B. RICO

Reliable Management, KSN, and the KSN partners also moved to dismiss the RICO Act claim (Count 28) for lacking the required particularity. KSN Mot. Dismiss at 14; Reliable Mot. Dismiss at 11-12. Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt," 18 U.S.C. § 1962(c). To state a viable RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern

12

(4) of racketeering activity."[8] *Slaney v. The Int'l Amateur Athletic Fed.*, 244 F.3d 580, 597 (7th Cir. 2001). A RICO claim that rests on a predicate act of fraud also must meet the "heightened pleading standard" of Federal Rule of Civil Procedure 9(b). *Id.* Rule 9(b) "serve[s] three main purposes: (1) protecting a defendant's reputation from harm; (2) minimizing strike suits and fishing expeditions; and (3) providing notice of the claim to the adverse party." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (cleaned up). It is meant to "force plaintiff to do more than the usual investigation before filing [the] complaint." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). To plead a fraud-based RICO claim with particularity, plaintiffs must, at a minimum: (1) describe the predicate acts of fraud with some specificity; (2) state the time, place, and content of the alleged fraudulent communications; and (3) notify each defendant of his or her role in the alleged scheme. *EQ Fin., Inc. v. Pers. Fin. Co.*, 421 F. Supp. 2d 1138, 1143 (N.D. Ill. 2006) (citing *Goren v. New Vision Intern, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998)). "Loose references to mailings and telephone calls in furtherance of a purported scheme to defraud will not do." *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994).

---

[8] The Amended Complaint does not specify whether the RICO claim is premised on a "pattern of racketeering activity" or "collection of unlawful debt." Under RICO, "collection of an unlawful debt" pertains only to debts related to illegal gambling activity (or demanding an unlawful interest rate), so it would not apply to the circumstances alleged here. *Del. Motel Assocs. v. Capital Crossing Servicing Co. LLC*, 2018 WL 509956, at *2 (N.D. Ill. Jan. 23, 2018). So the Court assumes that the Stollers intended to allege a "pattern of racketeering activity."

13

Here, the Amended Complaint falls well short of adequately alleging a RICO claim. At the outset, the Stollers' response brief does not at all address the RICO claim. On this omission alone, the RICO claim is forfeited. In any event, the Amended Complaint, though long on vitriol, Am. Compl. ¶ 199 ("The Defendants are nothing more than 21[st] century debt collector bandits …."), is short on concrete *factual* allegations in support of the RICO claim. On the first element—the question of who conducted (or participated in the conduct of) the alleged enterprise's affairs, *see Slaney*, 244 F.3d at 598—there is no way for any of the named defendants to know what is being alleged against them. Instead, the Amended Complaint relies on generalized allegations. Am. Compl. ¶¶ 185-201. It is true that the Stollers cite, at times, Group Exhibit 9 to the Amended Complaint. But that exhibit comprises 82 pages' worth of pleadings from other cases (and the pleadings' attachments), as well as one federal court order. It is not up to the Defendants (or the Court) to suss out which allegations in that Group Exhibit apply to the RICO claim or how.

Relatedly, the same problem infects the allegations on what makes up the "pattern of racketeering activity." Under RICO, a pattern must comprise, at a minimum, two predicate acts of racketeering. *Slaney*, 244 F.3d at 598-99. "[A] single fraudulent scheme with only one injury to one victim [is] not a pattern of racketeering activity under § 1962(c) simply because it required several acts of mail and wire fraud to inflict the single injury." *Id*. Remember, too, that the Stollers premise the RICO claim on fraud, so Civil Rule 9(b) requires: (1) a description of the predicate acts of fraud with some specificity; (2) a statement of the time, place, and content of the

14

alleged fraudulent communications; and (3) notice to each defendant of his or her role in the alleged scheme. At most, though, the Amended Complaint cobbles together generalized and sweeping allegations about the "KSN Enterprise" and the "Reliable Enterprise." For example, those two enterprises are "associated together for the common purpose of limiting costs and maximizing profits by fraudulently sending notices and false invoices to condo owners through the United States." Am. Compl. at ¶ 186. The two enterprises engaged in a "scheme to defraud condo home owners and to unlawfully send over thousands of fraudulent collection letters," *id.* at ¶ 190; indeed, notices went out to "over 265,100 innocent condo owners," *id.* at ¶ 197. But who did what, and when? What was the factual context? The Stollers cannot fill the Rule 9(b) gap by blanketly citing Group Exhibit 9 (the 82 pages' worth of other complaints and exhibits) without explanation. And that is especially true because the Stollers' response brief says nothing about RICO. The Amended Complaint does not adequately allege a RICO claim premised on fraud.

### C. Mail Fraud

Defendants also move to dismiss the "mail fraud" claim (Count 5), which alleges that Don Fumo, Reliable Management, KSN, and "Nickolas Mitchell et al." engaged in "mail fraud" by "knowingly mak[ing] a false record or fil[ing] a false claim against Christopher Stoller for $109,208.66 (Exhibit 1)[,] having devised or intending to devise a scheme to defraud Christopher Stoller, and used [sic] the mail for the purpose of executing, or attempting to execute, their scheme or specified fraudulent acts." Am. Compl. at ¶ 77. But there is no civil cause of action under 18 U.S.C. § 1341.

Section 1341 is a criminal statute. Although mail fraud can qualify as a predicate "racketeering activity" for a RICO civil action, *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 649 (2008), there is no independent civil cause of action for mail fraud, *Bajorat v. Columbia-Breckenridge Dev. Corp.*, 944 F. Supp. 1371, 1377-78 (N.D. Ill. 1996). The mail fraud claim is also dismissed.

### D. State Law Claims

Having dismissed all of the federal claims, the Court relinquishes supplemental jurisdiction over the Illinois statutory and common law claims. When all federal claims are dismissed from a case, "there is a presumption that the court will relinquish jurisdiction over any remaining state law claims." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) (*per curiam*) (citing cases). Indeed, the presumption is statutorily expressed in 28 U.S.C. § 1367(c)(3), which provides for the discretionary relinquishment of state claims when the claims providing original jurisdiction (here, federal question jurisdiction) have been dismissed. With no discovery having been taken in this case, it is sensible to allow the presumption to kick in and relinquish the state law claims to state court. So the Illinois statutory and common law claims are dismissed without prejudice to refiling in state court.

### E. KSN's Motion for Sanctions

The final issue to consider is the KSN Defendants' motion to impose sanctions on Christopher Stoller under Federal Rule of Civil Procedure 11(c). KSN Mot. Sanctions. The KSN defendants contend that: (1) Stoller lacked a valid basis for the

16

FDCPA claims against the KSN partners, *id.* at 3-4; (2) the fraud claims were "woefully deficient" under Rule 9(b), *id.* at 4-5; (3) Stoller "utterly failed to conduct any due diligence," as required by Rule 9(b), *id.* at 5-6; (4) Stoller has been previously sanctioned "for the very conduct he engages in during this litigation" and "failed to learn any lesson," *id.* at 6-7; and (5) the negligence claims were frivolous and harassing, *id.* at 7-8. KSN asserts (and the Stollers do not dispute) that it followed Rule 11's safe harbor provision, Fed. R. Civ. P. 11(c)(2), by sending Stoller a copy of the sanctions motion and a letter demanding withdrawal of the Amended Complaint within 21 days.

Under Civil Rule 11(c), sanctions may be imposed on a party for "making arguments or filing claims that are frivolous, legally unreasonable, without foundation, or asserted for an improper purpose." *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998) (defining "frivolous argument or claim" as "one that is baseless and made without a reasonable and competent inquiry."). A court should "take account of the special circumstances that often arise in *pro se* situations," but ultimately, "[s]anctions can be imposed for any suit that is frivolous," even one brought by the "unrepresented." *Vukadinovich v. McCarthy*, 901 F.2d 1439, 1445 (7th Cir. 1990).

In light of the relinquishment of the state law claims, the Court will limit its analysis to the federal law claims addressed above. It is true that the federal claims against Reliable and KSN (as a law firm) were inadequately stated. But given the Stollers' *pro se* status, targeting Reliable and KSN under the FDCPA was not so unreasonable that sanctions should be imposed. The RICO claim is much worse in its

17

inadequacy, but there, too, the Stollers' *pro se* status is a mitigating factor when considering the complexity of RICO (though it does not help that the Stollers' response brief did not address the RICO claim at all). The claims that come closest to deserving sanctions are the FDCPA claims against the individual KSN partners. As discussed earlier, the Amended Complaint provided zero basis to somehow pierce the corporate veil between KSN and the KSN partners, or to otherwise impose individual liability on the partners. Indeed, for one defendant, Diane Silverberg, the Amended Complaint alleged nothing beyond group-pleading allegations to suggest that she had done anything wrongful personally. She did not even get the one-by-one listing treatment that generally described each named Defendant. Am. Compl. ¶¶ 16, 21, 23-28. If the case had moved forward here in federal court (or if it does in state court), and discovery uncovered a reasonable basis in fact to name Silverberg, then the Stollers could have asked to add her to the case. It should not be the other way around: suing every KSN partner without reason and then narrowing the case later.

Having said all that, the Court gives the Stollers the benefit of the *pro se* doubt and exercises its discretion to impose no sanctions. Yes, the Stollers are running out of excuses, after having been sanctioned in state court for related litigation in this ongoing landlord-tenant battle. Pls.' Sanctions Resp., Exh. B. Even *pro se* litigants are subject to Rule 11 sanctions. But with the state law claims relinquished, declining to impose sanctions here will not prevent another court—namely, the state court— from considering the broader conduct if the Stollers pursue the remaining claims in state court and lose there. If KSN or Reliable (or both) ask for sanctions in state court,

18

the state court will be in a better position to consider the plethora of other claims. The Court thus denies the motion for sanctions.

## IV. Conclusion

For the reasons described above, the motions to dismiss the Amended Complaint are granted with respect to the federal claims (Counts 1, 2, 3, 5, 14, 15, 16, 28). Those federal claims are dismissed with prejudice, because the Stollers have already amended the complaint once and did so after the Defendants' moved to dismiss the original complaint, R. 10; R. 23. The state law claims are dismissed without prejudice to effectuate the relinquishment of supplemental jurisdiction. The motion for sanctions is denied. The motion to substitute, R. 43, is terminated without prejudice because of the dismissal of the case.

ENTERED:

      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: May 12, 2020